Case No. 15-1345, Raymond J. Peccia, Companies, Inc. and L. Petitioners v. Securities and Exchange Commission. Mr. Perry for Petitioners, Mr. Stern for Respondents. Mr. Perry, good morning. Good morning, Your Honors, and may it please the Court. The Supreme Court has held that a federal adjudicator who presides over a trial-like adversary proceeding is an officer of the United States, even if his decisions are reviewed discretionarily by a higher authority. That is the unmistakable import of Freytag and Edmond. Judge Elliott, who presided over the trial in this case, is such an officer, and the SEC itself told us as much. When he was appointed, the SEC issued a press release that said, And when Judge Elliott presided over the trial in this case, in a black robe, sitting behind a high bench backed by the flag and symbols of office, my client, Ray Lucia, certainly understood that he was in the presence of sovereign authority. And when Judge Elliott passed sentence on Mr. Lucia, barring him from lot for life from his chosen profession, he exercised significant authority on behalf of the United States. After all, Your Honors, why did Mr. Lucia and the government lawyers, Mr. Lucia's counsel, all stand when Judge Elliott walked into the courtroom, just like we all stood this morning when this panel walked into the courtroom? What matters for our analysis in determining whether the judge here, the administrative law judge, was an officer? Is it only what Congress specified in the statute, his or her authority is? Or is it the statute plus the regulations that the agency has promulgated? Or is it the statute plus the regulations in practice? And I suppose also press releases. Judge Wilkins, practice is, of course, important. Regulations are important. But we have to always start, we submit, with the statute. And the statutory authority conferred by Congress to hear adversarial proceedings, trial proceedings, under APA Sections 556 and 557 is conferred on exactly three categories of officers. Agencies, members of agencies, or administrative law judges. So we start with the APA. And we know that we're not talking about the whole universe of the federal government. We're talking about a very carefully defined. And we know that the first two categories are officers. Agencies and their members, the SEC, are officers. So the third category, under the principle of a eustem generis and others, is also an officer. And we end up further by the organic act of the SEC, the Exchange Act, which specifies in so many words that ALJs of the SEC are, quote, officers. And we know from the Supreme Court's decision in Germain that when the Congress uses the term officer, it means a constitutional officer. Well, Mr. Perry, if what Congress said were determinative, and I think OLC in its 2007 opinion expressly said it's not, because it would be circular. Congress would just define someone by using the term. I think we have a term that's like the term jurisdiction, which sometimes means jurisdiction in the Article III sense, sometimes doesn't. Officer sometimes means officer in the separation of powers sense, in the appointment clause sense, sometimes it doesn't. So we have to look at the exercise of sovereign authority. And you mentioned that the ALJ here entered a bar, but wasn't it, in fact, the commission that entered the bar? And isn't that in the statute that it's only when the commission adopts what the ALJ has proposed that it becomes, in fact, effective? Judge Pillard, I need to answer that in two steps. First, when a party seeks review by the commission, the commission does review an ALJ's decision. Of course, it exercises deferential review as to all factual questions, as it did in this case with respect to the witnesses, the two investors or seminar attendees who came to the case. And second, that level of review, that kind of discretionary review does not matter. Edmunds said that in so many words. And it's important to tie your two questions together, Your Honors, to go back to the statute. 15 U.S.C. 78d1 says that the commission has the discretionary review of these decisions. It does not have to review them. The commission itself admits, I take it, that if they don't review, then the decision has to be rendered by an officer because it comes to this court then on substantial evidence review and no officer will have passed on it. If Congress gave the commission the discretion not to review, as it did in the statute, then the decision that the commission may choose not to review must be rendered by an officer. There is no other conclusion available from the statutory scheme. Don't we assume regularity on the part of government employees? If my clerk's draft is going to go out over my signature, I get a chance not to review it, but I would be failing in my duty if I did that. And here, the opinions are going out as the opinions of the commission. And you refer to, you know, that they don't have to review them, but the statute actually makes them the commission's decision. So I would assume that the commission is, in fact, reviewing all of them. Judge Pillard, that's not correct factually or legally. First, the ALJ decisions, unlike your law clerks, go out over the ALJ's name. They are required by regulation to be published on the SEC's docket as the ALJ's decision. Law clerks, secretaries, file clerks, gardeners do not publish decisions of the United States in their own name on the SEC's docket or any other agency. Legally, the commission may review, but it does not review. And the Bandemere Court in footnotes 25 and 36 made this point very clearly. There is nothing submitted by the commission that says they do review. They may review, but they do not. And 90% of the ALJ decisions rendered in this agency are never reviewed. This is why I asked you the question I did a few minutes ago. Your argument seems to be that we can look not just at the statute, but at practice and regulations, and if all of that shows that there is significant authority, then the person at issue can be an officer. What if the statute grants the person in that position broad authority, but the regulations and the practice say that the person will not exercise that authority? And let's suppose the SEC had a regulation that said that ALJs can do nothing more than preside over depositions and hear evidence. Are they still an officer? Your Honor, I would submit that presiding over depositions and hearing evidence and deciding on the admissibility of evidence, therefore shaping the administrative action. Let's make it easy. They don't even do that. If somebody has an objection, then they call an SEC commissioner, and the commissioner decides what is the objection. To answer your first question, if the statute gives them the authority, that authority must be exercised by a constitutionally competent officer, and the agency cannot, by regulation, change the status of the officer. If the Congress has vested powers in an individual, then those powers must be exercised by a constitutional officer. Let me ask a question about that. That sounds like it's a statutory grant of authority that's dispositive. So as I read the statute here with respect to the SEC, which is 78D1A, it grants potential authority not only to administrative law judges but also to employees? Yes. So would that mean that because employees can potentially be the repository of the delegated authority, that every employee also is an officer? No, Your Honor, because you have to read that delegation in conjunction with APA section 556 and 557, which makes clear that hearings on the record can only be conducted by an agency, a member of an agency, or an administrative law judge. So that while the SEC organic statute allows delegation to other things, for example, the ministerial finality orders that Judge Filler referred to are intersecting court with the commission. I don't think he's an officer or the secretary of the commission. I don't think he's an officer. He is just conducting, just like the clerk of a court may enter a mandate. This point, though, in the organic statute, separating administrative law judges from employees is another indicium of congressional intent to say that law judges are not employees. It doesn't matter what the agency says about the ALJ's role. All we have to look at is this statute and the APA, and we know just from those two that ALJs and the SEC are officers. We know that here, Your Honor. We have a series of hypothetical questions whether the agency could limit powers, and I'd like to stress that the importance under the Supreme Court's cases is the powers that the officer has, not the powers that they don't have. You know, the government has an argument that the touchstone is this or the touchstone is that. There is no constitutional touchstone, because if there were, you'd have a roadmap for evasion by Congress. What there is is a collection of powers. The Supreme Court has looked at practice. For example, in the Ryder case, the court found the highest military court's deferential standard of review in a judicial decision rather than in a statute or regulation, which is the same as we have in this case, and therefore Ryder's control of the statute. The commission doesn't ever redo the trial and hear the witnesses, does it? The commission has the authority to do that. It has never done that, in my knowledge, since the Exchange Act was adopted in 1934. So the credibility of the witnesses is assessed solely by the administrative law judge? In fact, in this case at JA 65, the commission remanded the administrative law judge, stressing the, quote, vital role that the administrative law judge plays in shaping the record and saying that the commission's review is, quote, no substitute for the law judge's assessment of witness credibility and demeanor and so forth. And the commission gives great deference, in fact, near total deference. I'm not aware of any commission decision that has ever overturned a law judge's determination of factual finding based on credibility so that we have a deferential standard of review. We also have the law judge. Mr. Perry, did Mr. Luchina seek commission review of any question of credibility in this case? We did, Judge Perry, not that it would matter for the ultimate outcome here, but we challenged the ALJ's determination that based on the two seminar attendees' testimony that either materiality or scienter was found because the overwhelming evidence in the record was the contrary and the commission simply adopted the ALJ's determination as to those witnesses as part of its opinion. And that's at JA 115 is the commission's opinions and 105, I believe, is the ALJ's determination. I was just going to say, you were pointing us to 557, but on 557, on appeal from or review of the initial decision, the agency has all the powers, which it would have in making the initial decision. So the commission actually has authority to call witnesses, to make credibility determinations, to redo anything it feels that it should, no? The commission has that authority. It has never exercised it to my knowledge, Judge Perry. Well, I'm going to ask you about the effect of Freetag on this case. I agree with him that Freetag, properly read, does not require a final authority. But I agree with you about that. And I also agree with him at a certain level that the STJs there look a lot like the ALJs here. But what about the court's emphasis in Freetag on the fact that the tax court was an institution that exercised judicial authority? It said that it was like a district court, and it had, it said it could punish contempt by fine or imprisonment. It gets to tell witnesses. And it pointed out that its actions were regarded by the court of appeals as if it's a district court, and it compared that to all of the administrative agencies under the WHA. In other words, the STJs could exercise the full power of the tax court. So, when you think about Freetag and its impact here, you really have to give a lot of weight to the fact that the tax court is just a very different institution than the SAC, and the employees or officials involved in it have very different powers. And we have to be careful about expanding Freetag in a way that would affect all other non-judicial administrative agencies. Judge Tittle, the Supreme Court has not identified or distinguished among the branches. It has held that Article I adjudicators are officers in Siebold, which is the judges of elections, and in Freetag. It's held that Article II adjudicators are officers in Ryder, Weiss, and Edmund. It's held that Article III adjudicators are officers in Hannon, the clerks, and Allred and Gobart, the commissioners who are now magistrate judges. And in all of those cases, the branch in which the power is nominally assigned does not matter so much as what the powers are. But why did the court not set such a deal with Freetag of distinguishing tax court from other administrative agencies when the issue before it was whether they had to generalize one fact in favor of officers involved? Judge Tittle, the opinion has two separate parts. The part that had discussed whether the tax court is an Article I court of record was joined only by five justices. There was a 5-4 decision on that point. And that mattered only to the appointing authority, whether or not the tax court could appoint the officers. The court was 9-0 on whether the STJs were officers. That was a separate part of the opinion in which the judicial power has no role. The contempt power has no role. That's a totally separate question. And here we know the appointing power rests in the SEC because 3105 of the APA says the agency shall appoint. Judge Tittle, why do you say the contempt power had no role in that part? Because I thought the court said in describing what the STJs do, they take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders. Judge Finnebausen, and SEC AIJs can do all of those things. And this is a very important point. The tax court had contempt power by statute. The STJs did not have contempt power. So you pieced your way through the statutes, and I don't necessarily disagree with you. That language is in there about what the STJs can do, and I guess it's possible that that's because all of the tax court's authority was delegated to STJs. That's not correct, Judge Finnebausen. If you look back through what the government said in that case, the STJs had a limited subset of the tax court's authority. When the court said power to enforce compliance with discovery orders, they were saying issue subpoenas, require attendance at depositions, and impose consequences on the parties, including default judgments and adverse evidentiary findings, for failure to comply with those things. SEC ALJs have exactly the same power under the SEC's regulations and the Organic Act of the Exchange Act. They can issue subpoenas. They can require attendance at depositions. If you don't show up at a deposition and you're a party, the ALJ can find facts against you or can enter a default judgment. It may not have contempt power in the sense of fining or imprisonment, but that's not surprising because, in general, contempt power is for the Article III courts to exercise, and if there's one thing we know for certain, these judges are not. I thought Article I courts did have contempt power. Only by statute, Your Honor. The notion of an Article I court, of course, is not constitutional. It's creative. And by statute, Article I courts and Article II courts, you know, some military judges have contempt power, some don't. The court has never said that contempt, in this court, that contempt is the hallmark of an adjudicatory official. If that's false, the commissioners in Allred and Govart, the clerk in Hennon, did not have any contempt powers, but they were judicial officers, just like the ALJ's judicial officers. So can I just ask, just on the details of the fray peg, so this last clause that says the power to enforce compliance with discovery orders, if we assume that that's referring to the tax court, the tax court's authority over power to enforce compliance with discovery orders is different from the authority that SEC ALJs have. STJs could directly enforce them in the manners I've just said. But the tax court. Or STJs can apply to the tax court for a contempt sanction, just like an ALJ through the SEC can apply to a district court. I guess I'm asking a different question, which is if we just assume that, if we compare the tax court's authority in fray tag with SEC ALJ authority, and I know that you think that's an inappropriate comparison. I get that. But I'm just saying if we assume that that's a relevant comparison, then there would be a difference. Yes, Your Honor, because administrative agencies, including SEC, do not have contempt powers. That's one of the differences. The institutional differences between Article II and Article III is that contempt doesn't come with the executive. For very improper reasons. You know, the prosecutorial function is already vast and dangerous enough. We wouldn't want to give summarily powers to executive officers without the independence check of Article III. Two quick questions about the consequences of going off. One is I think you said in your brief that we can't go far on a decision to get the SEC ALJs, and that it wouldn't affect a thousand or so other ALJs who work for independent agencies. Is that right? Judge Stahel, the question in this case is. . . How would that be? Your Honor, first, this is a petition for review, so the only question before the court is the SEC ALJs. I understand. . . Your Honor, that's why I asked you the question. The question is for other ALJs. So. . . You know, the federal. . . In short, Your Honor, that's a consequence of whether those ALJs and federal officers. . . I'm going to think about whether or not that affects every ALJ that works for an independent agency. As best we can find. . . I don't know. . . I'm not sure we can give the government's view. There are 142 ALJs in the federal system that conduct adversarial enforcement proceedings subject to 556 and 557 of the APA. 142 ALJs in 24 agencies. The government hasn't put that information on the record. We have done that in our research. There's nothing in the record. And again, this is a petition for review. I want to be careful of not going outside the record without telling you that's what I'm doing. But as best we can tell, there are 142 judges that would be affected. The other judges, the vast majority of them, are Social Security judges. The government, the United States Justice Department, takes the position in the next case, at page 18 of its brief, that the fact that those judges are engaged in the doling out of government largesse rather than executing enforcement powers on behalf of the president makes all the difference. I don't know if that's true or not, but the government has taken that position. And for present purposes, it seems to me it's at least an arguable distinction. We tried to find, in response to your concern, Your Honor, the number of judges that are actually like SEC ALJs, and I believe that number is 142. I just have one other question about the implications. The DeSanto consecutive case, and that is the question of whether or not a federal consulate, if there are federal offices there, would lose their tenure protection. Do you have an idea about that? Yes, Your Honor. I think it's a very difficult and consequential constitutional question. It is not the same question as in Free Enterprise Fund, as the Supreme Court made clear in footnote 10. It turns in part on the functions of the officers. I think I was just talking about the inferior officers. Your Honor. If there's a inferior officer appointed by a principal office and they lose tenure protection, how can a judge have no tenure protection? Your Honor, in this case, you actually potentially have triple layer because the appointing authority is the SEC. The removing authority would be either the SEC or the MSPB or both in conjunction. The SEC has been assumed to have removal protection, although never decided. The MSPB does have statutory removal protection. And there's a further constitutional question, I would submit, whether the Congress can split the appointing authority from the removal authority. I think that is a good question. I think the Free Enterprise Fund raised two points. One, that they might be employees rather than officers, and even if they were officers, that they exercise adjudicative authority, and therefore that might be a distinction. I don't know whether that will turn out to be a distinction, but there were two things listed in that statement. I agree with that. So let me hear you answer again to my question. How do I think about the implications of this case? Assuming that they were the inferior officers, do they lose their tenure protection or not? Your Honor, I think there would be litigation over that. I think that is a significant question. It hasn't been raised in this case. It hasn't been raised in this case. I'm not trying to duck the question. You asked for us to extend the fund tag to 142. What did you say? 142, Your Honor. 142 employees. It was the independent agency. So don't you think they should know what the consequences of that are in terms of their possibility of losing their tenure protection given it for their price? For their price. That's to suggest that they will. Judge Tatel, if following the Constitution has consequences, then consequences must be faced. The answer is not to avoid following the Constitution. If they are officers, then they are officers. My question was, Your Honor, as we think about whether to extend the fund tag beyond a tax court, they should consider the fact that if they're dying, they're likely raising significant constitutional questions with respect to the 820 ALJs. First, it's not an extension. It's an application. There is no extension required because these ALJs are so close within FRAE tags. Second, there will be questions. It does not mean the ALJs will lose their forecast protections. It may mean the MSPB loses its forecast protections, for example. It may be that this Court or the Supreme Court would decide that Congress cannot split the appointing and removal points. I agree with you, Your Honor. These are hard questions. These are significant constitutional questions. They would be appropriately litigated in another case. They are not presented here by either party, for good reason, because they're not presented. And I'll come back to the statute. The appointing power, which is all that is at issue here, is specified in the APA. Section 3105 says each agency shall appoint its ALJs. The SEC has never disputed that it could come into compliance with the appointments clause without changing a single statute or regulation. Whether that has removal consequences, I agree, is important. I agree, is likely to engender litigation. I personally think, for what it's worth, there are constitutional defects through and through this system, that this is not the first case the Court will see. But ruling them not to be officers is not the way to end that litigation because you'll still have the conflict with the Band-O-Mir decision. Whether 10th Circuit properly held they are officers. If that conflict remains, it will have to go to the Supreme Court for resolution. Mr. Perry, you referred several times in your brief to this ALJ system of creating a pet court of the SEC and allowing the SEC to litigate on its home court. But it seems like the remedy that you would be seeking here, which is to make the SEC ALJs more directly politically accountable to the head of the agency, would run in exactly the opposite direction from a cure for the, what you call, pet status of this Court. Judge Pillard, the appointments clause is about accountability and transparency, not independence. And it's important for the public, for respondents in enforcement proceedings, for the Commission itself, and for this Court, which reviews more of these cases than any other judicial body, to understand the line of authority that runs from the Commission of the ALJ. The ALJ, for example, in this case, Cameron Elliott, Judge Elliott, has never been reversed by the Commission at the time we filed this interview. He couldn't get any more closely tied. And the Court should be... But that problem, to follow up on Judge Pillard's question, that problem is going to be exacerbated by the remedy here. I disagree. Potentially, because they're going to be appointed directly by the SEC commissioners, and presumably that's even more of a captive court. Judge Stravina, the basic premise of the appointments clause is there should be no more than one degree of separation between the President and the officers of the United States. Right. I understand your legal theory. It's just there's a mismatch, arguably, between the rhetoric, some of the rhetoric, and the legal theory. Judge Stravina, the... More of a Crowley-Benson rhetoric. The Commission, as I said in the press release, announced that they are independent judicial officers. That's the position they used to take in this Court. Now they're saying they're employees, like file clerks and gardeners, and they're not independent at all. What I'm saying, Mr. Perry, is if an agency, everyone in which has to be accountable to the President, wants to know what non-policy-related people, non-political people, would decide, they can set up something that looks independent. They can say, let's have a jury look at this. Let's call them in, give them this case, and see what these independent people would come up with. At the end of the day, we have to make the decision. We, the Commission. But we would like to have some input from an entity, and here it's the ALJ system, that looks independent. Let me just ask you a question, Mr. Perry. The question I have for you is, what is the power that these ALJs have to bind third parties or the government itself? And that's a phrase from the Broadway LLC opinion. What makes them an officer is the authority to bind third parties or the government itself. What authority do these ALJs have to do either of those things? So, one simple example, they can issue subpoenas which compel attendance of witnesses, third-party witnesses, government witnesses, party witnesses, with consequences of non-appearance. They issue oaths and affirmations. But people don't show up, and there's no consequence. That's not correct, Your Honor. If it's a party, you get a default judgment issued against you. And if a default judgment is issued against you, you have to go to the Commission to make that effective. Your Honor, and the Commission is not going to reverse that because you violated the rules. You have to go to the Commission to make it effective, no? They can rule on the admissibility of evidence. They issue decisions. And as to your former point, the Court has identified this. I just want to be clear on this to make sure I understand. Can they or can they not independently enter a default judgment now? They can independently issue a default judgment. The Commission has said that... Can they enter one that has operative effect without the Commission's sign-off or approval or acquiescence? Yes, under the statute. The Commission said that in Alchemy Ventures. The Commission has said that its preferred method is that they issue an initial decision, but the Commission expressly confirmed that all default judgments are judicially enforceable and did not disavow any of the previous ones, which comes to the constitutional... That was a remedy of ratification, Mr. Perry. That was not a decision of law. And, in fact, I wonder what the remedy is here. If the Commission, if these ALJs are found to violate the Appointments Clause, wouldn't under Oakley and our precedents the remedy be that the Commission could ratify? No, Your Honor. Rider and so forth. In fact, reserve your remainder of my time. All right. Judge Henderson, may it please the Court. I'd like to begin with the Court's permission where the Court left off with my friend, Mr. Perry, about the issues of binding and accountability. And there should be no doubt where accountability for a decision of the Commission lies. It lies with the Commission itself, which consists of members who were appointed by the President with the advice and the consent of the Senate. And that follows from the Commission's organic statute. The Commission is accountable in a court of law, as it is in this case, as well as in the court of public opinion. Now, the organic statute which counsel has stressed is simply a delegation statute. It's not particular to administrative law judges. It's the Commission's general authority of the Commission to delegate. And what it says is that the Commission has authority to delegate certain but not all functions. And it, at all times, retains the power to take back anything that it delegates. And it also says that nothing that is delegated can become the, can be deemed the statute worthy action of the Commission, unless the Commission declines, is the word in the statute, unless the Commission declines to exercise its right to take back and review and make its own determination. So in your view, is there anything that the SEC ALJ can do of his or her own force to bind parties or the government itself without the Commission's imprimatur? No. And the, at least two of the examples that have been cited are default judgments, and then there's the question about the contempt power. Yeah, the, to take the default judgment first, Judge Srinivasan, the, in Alchemy Ventures, the Commission said that certainly as a prospective matter, even a default judgment would be, could not become final and take effect without the Commission issuing its own finality order. But also the default judgment, I mean, let's understand what that means and why you would even need, you know, whether you might not even need an officer in such a case. I mean, this is a case where nobody shows up. I mean, if nobody shows up, what you're recording is the absence of a contest. But whatever the case may be, whatever you, whoever you could delegate such an issue to, the Commission has said that even orders in such cases only become Commission orders upon the issuance of the Commission's own finality order. Just to clarify, is there anything that the ALJs can do that will have operative legal effect on third parties or binding the government based on SEC inaction, or does there have to be affirmative SEC action in each case? There has to be a finality order in each case. And it should be stressed that any party, or any third party, not the Commission itself, whether a friend has cited one case in his brief in which the Commission declined to take review of an enforcement decision. But this emphasis on finality, isn't that, that's just, that was an alternative holding in FRETAG, right? I mean, that's not the sole holding in FRETAG. Oh, no, quite right, Your Honor. The, I mean, I think finality is crucial in FRETAG, but I don't want to sort of, you know, turn away from the Court's other observations in that case. What I do think is important here is, I mean, if I, I'm happy to move to FRETAG, but I'd like to just clarify, if I could, just the way that the Commission operates and just to clarify that anyone who seeks the Commission's review is dissatisfied with an ALJ decision. But the Commission never does the trial. The Commission never makes the credibility judgments that are critical in the trial. The Commission never makes the evidentiary rulings that are critical to the outcome of the trial. Now, credibility and evidentiary rulings are essential in any fact-finding situation, and the Commission does not do that. The judge does that. I mean, the Commission specifically in its discussion in this case of JA 159 through 61, the Commission talks about what it actually does. Does it ever hear live witnesses? Has it ever? I don't know the answer to that. I think the answer is no. And that is an obvious division of authority that makes sense in terms of Commission practice. Why would it redo the whole trial? But it also underscores my concern about this case is that fact-finding trials, livelihoods are affected, determined based on the credibility judgment based at the trial and also based on the evidentiary rulings, and one person is making those determinations. And the question is whether that one person in making those determinations is exercising significant authority, recognizing that that's an undefined term, but that's what we have to decide. I do think it's important what, I mean, I don't know, I mean, the record does not have the empirical evidence of the number of cases in which a Commission adds to the record, disagrees with evidentiary determinations. What we do know is that the Commission has the power to review de novo all questions of fact, as well as questions of law. I can't do credibility without seeing. You would agree, I think, that assessment of credibility is a critical function of trial decision-making. I believe it's in K versus FCC that this court specifically holds that a court, that an agency sort of head has the power to review credibility determination. That's what your argument was in response to Judge Kavanaugh's question. Isn't your position that even if it's never happened, if it's never in the history of the FCC happened, that there's been a credibility reassessment by the Commission itself as opposed to the ALJ, under your view, Corey, whether it's ultimately right or wrong, but under your view, the legal, the withholding of the legal authority to review it is enough? That's correct. I was merely clarifying that I guess maybe I misunderstood the question. No, you understood it. I just think the fact that they have the reserved residual authority to review or conduct a new trial reviews, I would think, not good enough for people who claim that the credibility determinations are essential to the outcome, which, of course, they are. I mean, the Commission expressly states in its discussion that if it finds that a credibility determination is at odds with the rest of the evidence, it is not going to be bound by it. And it certainly has that power. That happens very rarely, of course, and it can only happen very rarely because the Commission's not having a new trial. Your Honor, again, I do think that our position is that outlined by Judge Renovason. Right, I think that's right. He's saying your position is that it doesn't matter. My point is we're supposed to determine under the Supreme Court's test whether this person, this judge, is exercising significant authority. We have some precedent that helps give us some contours of that, but otherwise that's the question. And my point is in a trial, the person who makes the credibility determinations makes the evidentiary rulings, and the only person who ever does those two things, subject to some paper review later, paper review, seems like significant authority to me, especially when you're doing things like lifetime bars and massive sanctions against them. Your Honor, I mean, the Commission really, I mean, there's whatever. I mean, we not only have no empirical evidence on how often a Commission deals and rejects matters of credibility, but we know for sure that the Commission has the power to disagree with evidentiary determinations. There's no restriction. A deferential standard, isn't it? No. No, there's not. On credibility? The one area where the Commission is likely to defer is credibility, not on any other evidentiary determination. And even with respect to credibility, if that's contrary to the rest of the evidence, the Commission is going to reject the credibility determination. Can agency action, just the way the agency conducts proceedings, make someone an officer? I mean, if it turned out that the way the SEC was handling credibility determinations was deemed to be dispositive of whether they're an officer or not, can the agency practice have that effect, or do we have to look at whether Congress created them as officers, and if the agency is doing something wrong, that's for the agency to fix. I think that one would look to what the statute, what the power is, because that also goes to the question of whose decision it is and who's accountable. If the SEC issues decisions that are reversed by this court upon looking at substantial evidence, it's the SEC's decision that's being reversed. The SEC is accountable in this court, in the Supreme Court, it's accountable to Congress. Nobody thinks that the Commission's ALJs are the accountable party, and although there's a reference to being sentenced by an ALJ, no action of an ALJ, no sanction in this case or any other case takes effect upon the issuance of an ALJ sanction, and with respect to the power to enforce a discovery order, the ALJ not only can issue a subpoena, lots of people can issue subpoenas. The ALJ has no power whatsoever to enforce the subpoena. As the SEC explained in its decision, before a subpoena can be enforced, that has to go to the Commission itself, and then the Commission has to go to district court, and it's only at the point when a district court issues an order to enforce a discovery order. What about contempt? Contempt is a possibility. What about contempt? What is the authority to control the proceeding that the ALJ has? As the Commission explained, the power is to tell someone to leave the room. Literally, that's the power, and that's immediately appealable to the Commission. But that takes effect right then. That takes effect. It's immediately appealable. That's the extent of it. What about magistrate judges? Are they officers under your theory of this case, and if so, why? The magistrate judges do have contempt power. They've got all sorts of authority, including issuing warrants. They have got a list of it somewhere. It's not in front of me, but even Gobart has a partial list of the powers that existed at that time for the commissioners. There are more powers now. There are powers that an ALJ does not have. They are some sort of subset of the powers of a court of law. And with respect to the contempt power, Stinkford really has said that the contempt power is the hallmark of a court of law. And it's quite true that the reason that Article I courts have the powers of an Article III court is not because of Article III. It's because of the statute that gives it. So on Article I, so there is that language in FRATAG that says that the STJs have the power to enforce compliance with discovery orders, and there's a question as to which that applies to the STJs or to the tax court. So if what the FRATAG court was looking at, I don't know if it's FRATAG, FRITAG, or whatever, I don't know how to pronounce it, but what the court was looking at was the power of the STJs. Do you see a difference between the power of the STJs as to the ability to enforce compliance with discovery orders in FRATAG versus the power of SEC ALJs to do the same thing here? We do. Our understanding, we haven't been able to ascertain exactly whether in the one class of cases that was an issue with FRATAG that what exactly the contempt power is for an STJ. The arguments regarding the going back to the tax court to get a contempt enforced I don't believe appear in petitioner's briefs, so I'm not able to respond to them. But what I do think is important is that contempt and the language that's in FRATAG about the sentence that talks about those powers, especially if it's taken verbatim from the Second Circuit decision that had previously addressed the orders and tried to track down the origin of that, it's very hard to find it. But FRATAG was large part about, and I think Mr. Perry is correct, that most of the discussion of FRATAG, and it's a separate discussion, but most of the discussion in FRATAG is about whether the tax court is issuing, is exercising the judicial power. I'm sorry, Mr. Redd. I'm sorry, Dr. Redd. I don't know. It's just about FRATAG. My position on FRATAG is that FRATAG requires final authority for someone to be an inferior officer, and the LJs have no final authority, therefore they're not inferior officers. I think I say, if I don't agree with that interpretation of FRATAG, if I think that FRATAG means that if you have final authority, you are an inferior officer, but you don't have to have it to be one if you have significant authority. If that's the way I read it, do you have an argument, and I don't see it in your brief, but do you have an argument that if that's the proper meaning of FRATAG, that FCC and LJs are still not inferior officers because they don't exercise significant authority? Yes, Your Honor. And what is that? I mean, I'll answer that. I have to put it, just to help out with your answer. You don't have to answer my question in summary other than saying their decisions aren't final. Excuse me, Your Honor. I didn't get the end of the question. Okay. So what is it about their authority, what is it about their activities that, for much less has been claimed, they don't exercise sufficiently significant authority to qualify as an inferior officer? I think that, I mean, part of it is what we've been discussing with respect to the court's reference. I mean, one of the three or four powers cited by the Supreme Court is the power to enforce compliance with discovery. No, no, no, no. No, that's one of the powers where the Supreme Court says, and I fully understand the sort of the differing views of Judge Williams and Judge Randolph, you know, and Landry about the relative importance to give to the finality ruling in FRATAG and the sentence dealing with the other powers, and we're not trying to run away from that sentence. We think that even taking, just focusing solely on that, that's where the court's reference to enforcing discovery orders comes in. The finality, and remember, in FRATAG, nobody was disputing that the special trial judges were officers most of the time, and the government's argument was simply that in one class of cases where they could not issue the final orders, that they ceased to be officers for those purposes, and one of the Supreme Court's holdings, at least, was that that's not true. If you are an officer who issues these final decisions as was conceded, you don't stop being an officer at the point where you do this other category of cases, but then when the court is talking about that other category of cases, and it says, and it refers to the functions that the special trial judges exercise, and one of the powers that it cites is the power to enforce compliance with discovery orders, so that's something that the court is looking at. Do you think that was necessary to the court's holding? Because it says they take testimony. That applies here, correct? They conduct trials. That applies here. They rule on the admissibility of evidence and have the power to enforce compliance with discovery orders, so they list four things, three of which you can see the ALJs here do, correct? And the next sentence says, in the course of carrying out these important functions, presumably meaning each of those functions is important, the special trial judges exercise significant discretion. Again, that seems to apply 100% here, too, significant discretion here for the ALJs on taking testimony, conducting trials, and ruling on the admissibility of evidence. I think it was very much part of the court's analysis that all this was happening within a court of law. Maybe, but that's not what it says. Because it just lists those powers, says they're all important, says they involve significant discretion. So your whole case, and I understand why you're doing this, has to hang on that fourth one having been necessary, not just sufficient. Well, I think that the fourth one is particularly important because it is connected to the entire framework in which the court was examining the role of the special trial judge. I mean, the whole question there was whether someone who functioned in an Article I court and sometimes issued final decisions, sometimes did not, but was always issuing the array of powers that are vested otherwise in an Article I court, including the ability to call on the marshals to enforce an order, whether that person was. So I'm really confused because if we're only talking about. If we're only talking about Article I court here, we're really trying to figure out how this works with the SEC. And to follow up on Judge Tatel's question, what is the principle that's being articulated here? Because we get all down in the weeds with the specific things that these judges, that the judges or the ALJs can do. But the real question is we're trying to figure out how do we decide whether what they're doing is significant. And you seem to be saying it doesn't really matter what they do, how much authority they have. They run trials. They do all of this. But in the end, it's the commission that has the final say. So it's almost. I guess my question is can you articulate then what is the principle? Let's assume that they could do everything that a Article III judge could do, but the commission would have the final say. So would your argument be then their activities are not significant? I mean, I would have to see what that statute looked like. I mean, if it was really everything an Article III judge could do subject to review. I mean, if in effect a court were, if a statute were essentially to recreate a sort of judicial framework. I'm not trying to put this into the judicial framework. I'm just trying to get at what is the definition then for you of significance? Because if, let's say, they have enormous powers, incredible discretion, but at the end of the day it still has to be signed off in some way by the commission, then is your argument then their actions can't be significant? Because that seems like a finality argument. No, it's not a finality argument in the same sense, I think. I mean, there are a lot of people in the government who exercise very extensive authority, and they do it pursuant often to informal delegations. A chief of staff of an officer may be told, sort of, look, I want you to go out, and I want these two parties who've got conflicting views to come to you, and I want you guys to try and reach a resolution of the matter. If you can reach one, that's great. If you can't, I'm going to have to decide it. The chief of staff doesn't thereby become an officer. Nobody's saying he's not really important. So if you're recognizing that finality is not the principle, what is the principle?  Well, I wish I had a bright-line rule. I don't have one. I thought you were relying on it. That's not it. That's why I asked you a question. I don't know if I have a bright line, then what is it? I think that the... Contempt, then, right? I think... It's all you have. Ilana, I think that when you... That there is that what Freitag, and we know that Freitag doesn't, I mean, at least in the mind of the chief justice, didn't dispose of this case. You know, they flipped those hands in free enterprises, any indication? Just so I... To Judge Tatel's question, if finality is not the... If finality is someone who takes testimony, conducts trials, rules on the admissibility of evidence, and has the power to enforce compliance with discovery orders, is an officer. But someone who takes testimony, conducts trials, and rules on the admissibility of evidence, but doesn't have the last power, is not an officer. I think within, and I... I'm trying to figure out what sense that is. Within a court. I think, I mean, Freitag is all about... Did I correctly describe your argument? With the addition of in a court. I mean, I think that what we're saying is Freitag's very brief discussion about those four powers has to be understood within the context in which those... What does within a court add to it? Because this is what I'm not completely following, which is if the purpose of being within a court, like within an Article I court, is that there's authority to issue a final decision. I think there's a terminological issue going on here, because there's a final ultimate decision. That's one thing. And then there's things that you can do along the way to a final decision that can themselves be final. If we're talking about the category of cases in Freitag in which the special trial judge didn't have authority to issue a final ultimate decision, so we're only in the D4 category under the language of Freitag, then I thought that your argument was that even as to that category, a special trial judge still had significant authority as to that category. They couldn't issue a final ultimate decision, but they could do one final thing, which is with respect to contempt. And that was significant. That's different from SEC ALJs who can't do anything with respect to contempt without sign-off. Yes, but it's certainly, again, I would just add that this is all within the framework of a court of law. That's what I don't understand. Within the framework of a court of law, what is that adding to it, if the framework of a court of law you're in a class of cases in which the court can't issue a final decision? When the contempt power, the power to enforce compliance with discovery orders is mentioned, then what that means has to be understood with the way all of these things happen in a court of law. That's, I'm sure, maybe much out of a comparatively modest point, but I do think that it is very significant that when Congress enacted the APA, it considered the whole question of whether to create a court, which it would have been a court, or whether to make the political heads of the agencies accountable for the decisions. But the Appointments Clause is not so limited. The language of the Appointments Clause is speaking in terms of officers. And to go back to Judge Brown's point, I'd like you to go back to a higher level of generality. What is the principle that we are supposed to follow to determine, if it's not finality, to determine whether someone is an officer? Well, one of them is, I think- Isn't that the inquiry? We ought to ask that first and then see if the SEC ALJs fit under that rubric. So what's the principle? The principle, I think, I mean, one of the principles is that which Judge Pillard cited from the 2007 OLC opinion about binding the ability to bind the government, third parties, and exercising significant- But your chief of staff that you talked about earlier doesn't bind the government. He's not an officer. But he could be an officer. He could be, but there's no reason for him or her to be an officer. Why isn't the admission of-maybe it will help me understand if I can have a comparison point. So contempt power is a trigger. Why isn't the admission of evidence the power to decide what comes into the record and what does not? An exercise of significant authority. Your Honor, even if that were, the commission has plenary power to decide what- I'm asking, so is your position that that does constitute-if someone who has the power to control the admission of evidence, I'll put aside the whole contempt thing, that could also qualify you as an officer if you could make the final decision on whether a piece of evidence comes in? I think that would be a harder case than this one. If you don't have a decision on whether that's a- Mr. Sorrentino, there is a question about the consequences of assuring that the FCC ALJs are inferior officers. And you said that there are 120 equivalent ALJs that are relevant to agencies. Do you think that that's about right? I don't know how that figure was arrived at. If I could just ask, what do you expect the consequences of allowing that there are the fellowships that go through the list of the ALJs? I mean, I can't tell you what the end consequences will be. I know what the arguments are because some of them have already been made in- both identified by the Band-O-Mir decision and some of them have been made in the Timber Vest case, which has been briefed in this court and has been held in abeyance pending the resolution of this case. And the arguments- I don't know about the fellowships. I don't know about whether that would have an ALJs or a fellowship. But there is that kind of prediction. Your Honor, I don't want to get out ahead of the Solicitor General on these questions. I mean, obviously, I mean, I think Judge Kavanaugh was right that there are two parts to the free enterprise footnote. The court both notes the Landry decision and also- Your Honor, I thought I had lost it. Was I deciding this question with respect to ALJs? That's all. It just doesn't- Was I deciding it? That's correct, Your Honor. It's my final question about whether or not there are- about whether, if there are filing offices, they're subject to- what is their final prediction? Your Honor, I don't want to predict the outcome of those cases. I will tell you that that is the argument that is being made, that there is the argument. Mr. Perry suggests there's a triple for-cause removal in this case. The- I mean, it should be understood- I mean, the way that ALJs are removed is an agency head has to go to the Merit Systems Protection Board. The removal operates by the Merit Systems Protection Board making a finding of cause after a hearing. That's an upfront determination. That's not a remedy after an ALJ has been removed. That's the way the whole removal process works up initio, and that's consistent with the whole design of the ACA. Two things on this. One is, presumably, the government will argue, based on footnote 10, if you were to lose this case, that free enterprise fund does not kick in because there are adjudicative officers. Presumably, you'll make that argument. You may lose that argument. If you lose that argument, then the question will be which for-cause removal goes. Presumably, that would be the MST's, PD's protection, not the ALJ's. Although, again, who knows? Your Honor, I just recently read a lot of your articles that suggested that the answer would be one that I'm sure this court would be happy with, which is that this court appoint all of the administrative- I read that, too. That's not-I don't think that's what happened. I'm reluctant to speculate on the remedies if we were, unfortunately, to lose a series of cases, and we hope that we win this case now so that we don't at least- On ALJs, as I understand Mr. Paley's argument, he was talking about 140 that excluded SSA ALJs. Has the government taken a position on whether SSA ALJs are inferior officers? That case, I believe, is-I believe that there's been a first case that's been filed in a district court. I don't know that it's been briefed yet. There are, as we suggested, I think that Mr. Perry may have been referring to our initial panel brief where we sort of noted some distinctions that could be drawn. I mean, under this court's Tucker decision, this court indicated that there are three broad questions, sort of a finality and significance and discretion, and presumably this court, if it were reviewing it, would be considering all of those questions in determining whether SSA ALJs were officers, but we haven't briefed that, and I'm a little sort of reluctant to go too much further than that. Mr. Perry, what's the government's position on what the relief would be were this court to find that the SSA ALJs are inferior officers under the Appointments Clause? We haven't explicitly taken a position. We have not urged that it's-that it would be harmless error because this court's precedents suggest that it would not be, and that's not a question before the in-bank court. So, you know, whether a Solicitor General in some other proceeding might want to argue that, I don't know. We have not argued it here. I'm trying to make sure I understand the government's position with respect to something that I asked your friend on the other side about, and that is do we determine whether an ALJ here is an officer based solely on the statute, or do we take into account what happens in the real world or what happens with what authority is delegated by regulation? I think that the primary question is the one that Mr. Perry identified, the statute, but what we know is that both at the statutory level and in the practice level that's discussed at length by the SEC, that in this case, with the SEC ALJs, we know what's going on. We think that the statute and the practice are entirely consistent. I just would like to just briefly note that there has been sort of a statistic sort of tossed around about-I didn't mean tossed around. I meant there's been a statistic offered that-which I believe is based on petitioners like review of-it's not in the record-of SEC decisions that something like-referring to the large number of finality orders that are issued in cases where there's not plenary review, and the SEC looked into it. My understanding is that in the very vast majority of those cases involve cases where nobody shows up in district court. There are frequently cases involving shell corporations where the whole issue is that no registrations have been made, and that's-and obviously nobody then is seeking commission review, but what is clear is that whenever somebody does seek commission review that they get it, and the commission's careful decision in this case I think is an example of the kind of review- Just one follow-up. I want to make sure I understand your response to another question that I asked your friend on the other side. Is the government's position that if we were to write an opinion that said an ALJ that has powers, you know, a regulation removing-saying that the ALJs will no longer exercise powers A, B, C, and D, but will instead just preside over depositions, that then ALJs aren't officers anymore? I'm just trying to understand what your position is as far as what, if any, will room the commission has by regulation to change the status of an official. Well, I mean, the commission can use ALJs in any manner that it sees fit, consistent with the limitations on its delegation powers. So it could use-I'm not suggesting that this is a good idea, but I mean at least in theory it could, as your Honor says, sort of put them in more of a role of a special master, have them preside over hearings, not make various kinds of findings. I mean, it would really depend what this court thought was the ABCD of what could not be done or inconsistent with not being an officer. But what we do think is that the commission has, in fact, done everything that it needs to do to make sure that its ALJs are not officers. I understand that. I'd just like to get an answer to this specific question. If the commission changed its regulations tomorrow to say that ALJs are forbidden to do anything more than what a special master would do, just to use your example, would that change the legal analysis so that the ALJ is no longer an officer or does it only matter what authority potentially the ALJ has by statute? I don't know that anybody would have standing to challenge a regime like that in which nobody was functioning in the way an ALJ does, unless they thought that the special master was also, like, a problem. Like the idea that the commission was- Well, I mean, I'm just saying the next case would be someone like Mr. Nakita had a matter and this ALJ acting as a special master presided over some aspect of the hearing. The rest of the hearing was conducted by the commission. What I'm trying to understand is what effect, if any, do regulations limiting an official's authority play in the analysis of whether they're an officer? If I'm understanding Your Honor's question correctly, essentially what you're describing is that the commission would cease to be using ALJs in anything like their present form. They could assign the tasks that you're describing to any employee under their delegation statute, and if someone thought that that was a problem, they could challenge that, but I think then that would become the question. But I think that we would no longer be really talking about administrative law judges, sort of in any recognized or even technical sense. Can you explain to me- But it's right over your time, so- Have you got one more question, Judge Bloom? One more question. I just wanted to ask about Landry, because that was the basis of the panel's decision here, and that case found finality to be dispositive, and I'm not sure, but it seems that you are not making that argument. I guess we assume that the court took the case in bank because it wanted us to address the question of even if the court thought that there was more to it than finality, would that put it off to the outcome? And we think that, in fact, the definite finality and the fact that the special tax judges were officers was crucial to the court, were officers for most purposes, was crucial to the court's thinking. We think that Landry, as we sort of urged to the panel when the panel concluded, that we think that Landry was correct, but we also think that if the court were to consider that Landry was not a sufficient basis to rule for us in this case, that all of the rest of the front-deck opinion and the rest of Supreme Court prudence would lead the court to exactly the same bottom line. Can I just ask one more question? Once an ALJ decision issues, the commission could suite a sponte review it or someone could ask for it, but before that final decision, that final order from the SEC comes out, assume no party petitions for it. What does the SEC do? Does anybody look at that ALJ decision? Well, we know the commission has provided sufficient time for itself to- I guess it's that time. Does anybody do anything? Well, we know that in some cases, at least, the commission exercises suite a sponte review. We don't sign on the record exactly how the review process works, but certainly nothing- until the commission enters a finality order, there is no effect whatsoever. I guess there's no effect. I'm asking what the basis is for entry of that order. Is there anything in the record or any regulation or manual or anything that leads us to understand that somebody at the commission level looks at the ALJ order, even if it's one of these cases where- We know that the commission is looking at them because it sometimes exercises suite a sponte review and issues finality orders. The precise extent of the review in each case, I can't speak to that right now. Thank you very much. Judge Millett, after 42 days, the commission has to enter a finality order. It has no discretion. It has no options. 42 days, 21 days for the petition, 21 days- Well, if it's not a commissioner disobey, the commissioner could bring it before the commission, right? And if they don't, they have to- I mean, if it's not a case in which somebody has asked, they've gotten review before the commission. Is that not right? Your Honor, the point is if there's no ask, they don't. This is a case about what powers ALJs have, not what they don't. I would like to make one point on rebuttal. Before you do that, could you answer my question? Finality is not the principle. What is the principle? That was the point I was going to make. The principle is what powers they have. The court gave us four points at page 881 and 882 of Freytag. And it basically says the power to shape the record. Discovery, controlling discovery, admitting evidence, really taking testimony and conducting a trial. That is what makes an adjudicator an officer. Mr. Stern, what do you think about those that make an adjudicator an officer? Well, besides the fact that the Supreme Court has held that they are, they are the common sense notion of what a judge is. And let me come back to the point of Judge Elliott sitting on a bench in a black room. Why is he there? Why is he not being pursued by the FBI for impersonating a judge? It's because he has been invested by Congress with the authority to make that record. And the bright line we would submit, Your Honor, is... Well, everyone else before us said that. And now everybody else knows. They were? They were. So that can't possibly be the point, right? I will take the court to the statute. 5 U.S.C. section 556C. I mean, they didn't suddenly become inferior officers when they started being called ALJs. They have been an inferior officer since 1946, at least, Your Honor, with the modern APA. 556C describes the list of powers that if a federal official executes and is authorized to execute those powers, he is an officer. I just want to back you up. I want to assume, just assume outside this case, assume that an ALJ is purely recommendatory. That's all they can do is recommend things. But they also have the ability to conduct a hearing, to create a record, and rule on the admissibility and exclusion of evidence. No contempt power, no judgments, interlocutory or final, can be entered that have legal effect. But they can, the one thing they can do is control the admission or exclusion of evidence in the assembly of a hearing record. Would that make them an officer? In a hearing on the record under 556? Yes, Your Honor. So you don't even need the other things? Your Honor, the powers are listed, and the APA gives two options, recommended decision or initial decisions. We think there's a distinction if the court retains Landry, as we said to the panel. But the real answer, the right answer we submit is the list of powers in 556C, which the commission has adopted in its regulation 201 series, which are listed out on page 1178 in a helpful chart in the Bandemore decision, show that the taking of testimony, the controlling of depositions, the admission of evidence, the exclusion of evidence, the evaluation of witness credibility, and the rendering of initial decision, all is the powers of a judge, of an officer of the United States. Mr. Perry, is it your view, looking back at our decision in Tucker, that the collection due process presiding employees are also officers, and that the officers in compromise that do settlement work for the IRS, are those also going to be officers of the United States? And is Mr. Stern's example of chief of staff, are those all officers under your theory? Your Honor, those are all hard questions. My submission is limited to ALJs under 556B and C, because that's what we have in this case. This is a petition for review of agency action, and we are asking this court to declare that a 556B and C ALJ is an officer of the United States. That is a Freytag Edmunds controlled question. What about a chief of staff, if somebody is not appointed consistent with the Permits Clause, but operates as a chief of staff in the way Mr. Stern proposed? Officer or no? Your Honor, outside the realm of adjudicators, I would leave that to some other case. The 2007 OLC opinion, as Your Honor knows, segregates officers depending on their functions and roles, and footnote 10 of Free Enterprise Puzzle does as well, and I think we have a line of authority involving federal adjudicators that runs from Siebold and Hennon through Freytag and Edmund. Seven times the Supreme Court has looked at a federal adjudicator, and seven times they've said they're officers. Whether non-adjudicative officials are also officers involves a separate analysis, not present in this case, and we're not suggesting that the decision in this case would control all those officers. Question, do passives officers or not? I mean, those are adjudicative officers in some sense. In some sense, Your Honor, which is why I think it is very helpful that we have here an ALJ specified in the APA under Section 556. We have a cabined category of officers. There are many officials in the United States government, and the case or controversy requirement really demands that they be considered in their own terms, on their own merits, with a full record as to them. The only record we have here is as to these SCCLJs, and as to them we submit the overwhelming information shows that they have more authority than the judges in Freytag. They have more authority than the judges in Edmund. They decide these cases. They are subject to review. Mr. Stern, I think you're correct. Judges in Edmund, if there is no petition for review, have the authority to sentence people to death or prison. You think they have more authority here? And the judge here, Judge Elliott, sentenced my client to a lifetime bar against practicing his profession, and if he didn't petition for review, that decision is final. The judge in Edmund has the authority to do that with no decision by any higher authority. So does the judge here, Your Honor. No, they have to be verified by the Securities and Exchange Commission. We just disagree on that, Judge Filler, but I would refer the court to 15 U.S.C. 78D1C, which says that I'm right, and with respect, you're not. Thank you. We'll take a 15-minute recess before the next case. Stand, please. This court will now go to a 15-minute recess.
judges: Henderson, Rogers, Rogers, Tatel, Brown, Griffith, Kavanaugh, Srinivasan, Millett, Pillard, Pillard, Wilkins, Wilkins